(37 Misc. Rep. 259.)

McGUIRE v. McGUIRE et al.

(Supreme Court, Special Term, New York County.    February, 1902.)

DEED—DELIVERY—EVIDENCE.

 The owners of certain real estate conveyed the same to their sister, an illiterate elderly woman.    At the time of the original conveyance the grantors had taken a large excavating contract, and, to protect themselves against possible actions for damages, conveyed the property to their sister, with an agreement for reconveyance, and without any consideration.    Thereafter she executed deeds reconveying the title of each lot to the original owner.    The evidence showed that after the deeds of reconveyance were delivered they were given by the grantees to their sister, to be kept with the other business papers of the grantees, according to their custom.    *Held*, that the presumption, from the fact that the unrecorded deeds were in the possession of the grantor, that there had been no delivery, was overcome by the evidence.

Action by Hannah McGuire against Catherine McGuire and others for partition.    Judgment for plaintiff.    See 72 N. Y. Supp. 490.

W. J. McCormick, for plaintiff.

Man & Man, for defendant Philip McGuire.

Stephen H. Keating, for defendant guardian ad litem.

Thomas J. Samson, for defendant Catherine McGuire.

CLARKE, J.    John and Philip McGuire were brothers and partners in business.    By deed acknowledged September 20, 1869, recorded September 27, 1869, Abraham Steers conveyed to them premises on the south side of Thirty-Eighth street, beginning 369½ feet east of Second avenue, and extending easterly on Thirty-Eighth street 40 feet.    E. Ellery Anderson, by deed acknowledged October 30th, recorded October 31, 1876, conveyed to John and Philip a gore in the rear of said property.    John McGuire and Ellen, his wife, by deed dated and acknowledged November 13, 1876, recorded November 15, 1876, conveyed to Philip McGuire the easterly 20 feet front on Thirty-Eighth street of the premises conveyed by the last two deeds, and Philip, by deed dated and acknowledged and recorded on the same dates, conveyed the westerly 20 feet of said property to John McGuire.    That is, by mutual conveyances, they made partition between themselves.    Houses were erected on the lots, known as "Nos. 326 and 328 East Thirty-Eighth Street."    John and his family lived in No. 326, and Philip and an unmarried sister, Catherine, lived in No. 328.    By deed dated November 24, 1887, acknowledged November 26, 1887, and recorded on the same day, for the expressed consideration of $10, John McGuire and Ellen, his wife, and Philip McGuire, conveyed to Catherine, their sister, the whole 40 feet, with the buildings thereon, on Thirty-Eighth street, and so the record title of the Thirty-Eighth street property is in Catherine McGuire.    By deed dated May 6, acknowledged May 7, and recorded May 8, 1885, William F. Erving conveyed to John and Philip McGuire four lots on the northwest corner of One Hundred and First street and First avenue.    By deed dated November 24, 1887, acknowledged and recorded November 26, 1887, for the expressed consideration of $10, John McGuire and Ellen, his wife, and Philip McGuire conveyed said property to their

sister Catherine. So the record title to the One Hundred and First street property is also in Catherine McGuire. John McGuire died intestate in October, 1897, leaving three children him surviving. This action is in partition, brought by the eldest of said children. The complaint alleges that the plaintiff and the defendants Eleanor and James, her brother and sister, are seised and possessed in fee, by inheritance, of an undivided half part of said premises as tenants in common with the defendant Philip McGuire, and that the defendant Catherine McGuire claims some right, title, or interest in said premises, the exact nature of which is unknown to plaintiff, and which is a cloud upon the title, and asks the usual relief. Towards the close of the trial, and after much evidence had been taken tending to show that some papers in connection with this property had been executed which had not been recorded, the defendant Catherine McGuire produced the following deeds: First. A deed dated December 1, 1888, purporting to convey to John McGuire and Philip McGuire, "in consideration of the sum of ten dollars and other good and valuable considerations" the four One Hundred and First street lots. This paper recites it was "sealed and delivered in the presence of Morris E. Webber," and was acknowledged December 20, 1888, by said Catherine McGuire, before said Webber. It was never recorded. Second. A deed dated January 14, 1895, from Catherine McGuire, purporting to convey to Philip McGuire, "in consideration of one dollar and other good and valuable considerations," the easterly 20 feet on Thirty-Eighth street (No. 328 East Thirty-Eighth street). This paper was witnessed by John Webber, Jr., whose affidavit as subscribing witness was taken January 15, 1895. Not recorded. Third. A deed in all respects similar to the foregoing, purporting to convey to John McGuire the westerly 20 feet of the Thirty-Eighth street property (No. 326 East Thirty-Eighth street). The controversy is now over the validity, force, and effect of said unrecorded instruments. The question is one of delivery. If the two deeds to the Thirty-Eighth street property are held good, partition has been made as to those premises, and plaintiff asks to amend by striking them from the complaint. Plaintiff's theory at the commencement of the trial was that John and Philip, at about the time of the conveyance of their property to their sister Catherine for a nominal consideration, had taken a large excavating contract, and, to protect themselves against possible actions for damages, had put their real estate in her name, with the agreement that it should be by her reconveyed to them; that it had actually been reconveyed at or about the same time, but the deeds had not been recorded, although the necessity of keeping them off the record had long since passed. It is in evidence that John and Philip did have a contract for excavating Sixty-Fifth street, but further than this there is no proof. Philip positively denies any such agreement or understanding to reconvey, as does Catherine. And the dates of the unrecorded deeds do not agree with the theory of a simultaneous reconveyance. The deeds to Catherine are dated November, 1887, the unrecorded deed of the One Hundred and First street lots back to John and Philip is dated December 1, 1888, and the two unrecorded deeds to the Thirty-Eighth street lots January 14, 1895. Philip testifies that he and John gave all the

property to Catherine, and she also so testifies. What, then, is the explanation of these executed deeds, produced only in the course of the trial, and only after much evidence has been produced that some papers had been executed by Catherine? Catherine attempts to explain by testifying that, being ill, she thought she would have the deeds executed, that in case anything happened they might be ready, as she preferred John and Philip as her heirs to any one else. But she gives precisely the same testimony as to the deed for the One Hundred and First street property, and as to the two deeds to the Thirty-Eighth street property, although there was an interval of six years between their execution, the first being dated December 1, 1888, and the two latter January 14, 1895. She produces the deeds herself, testifies that she had always had them in her possession in a trunk of which she kept the key, and her counsel argues from this that there never was a delivery. It is conceded that if ever delivered all the formalities had been observed necessary to pass title. But she does not swear there was no delivery. She testifies, and so does Philip, that Philip was not present at the execution thereof, and never knew anything about these deeds. But she is not willing to testify that John was not present. She says "I don't know. He might have been." She does say that she sent John to his lawyers to get them to draw the deeds, and to bring them to her house to execute, and each of the attorneys, who, upon such instructions from John, attended to that matter, testify that John was present at the time of the execution. They were paid for their services by the brothers. Two of the deeds, at least, were in possession of these attorneys for a short time after their execution. Catherine is an elderly woman, unable to read or write. The family relationship of the parties, and their personal and racial peculiarities, add to the difficulties of the case. So long as John lived there was no trouble. The brothers were partners, and, with their sister, lived side by side. John used the house he lived in as his own from the time it was built to the day of his death, collected and used the rents and paid the taxes, and after his death his daughter collected the rents and paid them to her aunt to help clothe the children, who lived with Catherine, and to help pay the taxes. The brothers paid the taxes on all the property in common. Doubt is thrown upon Catherine's testimony that these unrecorded deeds were always in her exclusive possession after their execution, wrapped in the piece of newspaper in which they were brought to court, by the fact that that paper bears date September 6, 1900, years after the execution. It is undisputed that the business papers of John and Philip were kept in a drawer in a bureau in the house in which Philip and Catherine lived, and to which she had access. I am unable to accept Catherine's story. I am convinced that John McGuire was fully advised of the execution of these instruments, which returned the title of each plot to the source from which it came; that on Catherine's request he procured his and Philip's attorneys to draft the instruments, and procured their attendance at the house; that he was present at the execution thereof, and that delivery thereof after execution was duly made; that the subsequent possession of the instruments by the grantor is not proof of non-delivery, but is entirely consistent with the disposition made of all the

business papers of the brothers, and that title passed back to them. The complaint may therefore be amended by striking therefrom the allegations in reference to the Thirty-Eighth street property, and the usual decree for partition of the One Hundred and First street lots according to the several interests of Philip and the three children of John as tenants in common may be entered. Submit decision and judgment on notice.

Judgment accordingly.